Number 13-4446 Sawyer v. Superintendent Muncy SCI et al. Mr. Gilman and Ms. Hart Yes, sir, whenever you're ready. Good morning, Your Honors. Norris Gilman for Rita Sawyer and I'd like to reserve two minutes. That's fine. This was a murder case. It was tried in Lebanon County and whenever natural death, here a heart attack, is raised as a defense to the charge of murder. I think everyone hopes that the jury gets it right. And in order to assist the jury in getting it right, Pennsylvania has imposed what it calls corpus delecti requirements. The corpus delecti requirements go back to That's exactly right. But Pennsylvania uses it as to confessions and as to inculpatory statements that could be made hastily. Although Pennsylvania has come fairly close to abolishing corpus delecti. Oh, they did. In 99. Yes, but they did not because the decision was not precedential. And it's still in effect. And it was in effect at the time of my client's trial. And what are you saying that was incorrect with regard to the instruction? Was it the burden that was placed or the, tell me what was incorrect with it? Well, the corpus delecti jury instructions, which really have to be given upon request if the evidence would support. In this case set up very well for such an instruction. Dr. Michael Baden, a very famous pathologist, came in and with other toxicologists made a very convincing case that my client's mother died of a heart attack. Extremely convincing. There was no equivocation of that at the superior court. He testified that she might have died of a heart attack. And the jury has to find beyond a reasonable doubt. But what was wrong with the instruction here that perhaps caused beyond a reasonable doubt to have been brought into play? Or not brought into play, I should say. Yes. Well, the fact is there was no instruction on corpus delecti. The corpus delecti instruction tells the jury very clearly, and the case law says it must be clear, that before you can consider any of the defendants in that the murder was committed, that there was a murder. And that's a beyond a reasonable doubt finding, but it must be made without use of the defendants inculpatory statements. Is that a preponderance standard? Or is that a beyond a reasonable doubt standard? For admission... But her statements, how inculpatory were they really? Devastating. In the context of this case. Well, I mean, what would be... she was... didn't seem that she never quite admitted to the... to the... a murder. At points she... I don't know. I didn't see anything that really rose to the level of a true confession that I committed this murder and it was given to the police. It doesn't have to be a true confession. It has to be inculpatory under Pennsylvania law, and I've cited those cases. But the point is, at some point, you will come back to the corpus delecti instruction in a second. At some point, cannot a inculpatory or at least somewhat inculpatory statement or statements be overwhelmed by the evidence that would be against an individual? If you're saying... In other words, you know, the concept of, as the court used here at one point, harmless error. That the evidence is so overwhelming against the individual who's charged that the... I can see that. I can see that. But here what happened was the trooper asked my client point blank. And this is shortly after a very serious suicide attempt on her part. She tried suicide with a suicide note explaining that her mother was dead. She had nothing left to live for. She took four, basically, bottles of a very significant drug, which my client's a doctor. She knew would kill her. But the trooper asked her point blank, did you kill your mother? And my client responded, I don't think so. And now, is that inculpatory on its face? Maybe not. Maybe not. But when the prosecutor summed up to the jury, the prosecutor said a pointed question, did you kill your mother? And I'm quoting. And what does she say? I don't think so. I don't think so. I don't think so. The police are asking you if you killed your mother and you respond by saying I don't think so. Where is the righteous indignation? Where is the no way I would never kill my mother? Where is the are you crazy? Or how about I would never kill my mother? Where's that? Now, when the prosecutor does that, the prosecutor tells the jury this I don't think so is essentially a tacit admission. And she didn't respond properly as an innocent person normally would. And because she did not respond properly. Well, that may have, I mean, she could explain it. She was, you know, highly intoxicated. And so she may not. I would assume one of the arguments at trial was the based on the intoxication. She didn't know quite what did happen. Well, that is that is the alternative defense. That's true. That's true. But the way the prosecutor handled this, I don't think so. Now, when you say is there other overwhelming evidence, the Commonwealth has always said so. The Commonwealth says that the other overwhelming evidence is that on June 21st of 04, my client for the first time signed her mother who was suffering from Alzheimer's and dementia out of the nursing home, which cared for her. By the way, my client was the only of the three siblings to take care of her, signed her out and took her home for the evening. Even though my client the next morning was scheduled to be picked up to go to an alcohol inpatient program. Took her out of the nursing home, did not have a wheelchair for her, even though her mother was mobile. Took her out of the nursing home and apparently took diapers that she left in the car trunk and never used. Took her out of the nursing home and did not tell her siblings and didn't tell anybody that her mother was going to visit with her. And then when her mother was found dead, she found her mother dead. She didn't tell anybody until she was in the car and on her way to the alcohol inpatient program. And went to the barn first. She went to the barn to commit suicide. Yes. So she's reeling from the effects of these drugs because the suicide was interrupted by her partner's wife. And but she didn't tell anybody until she told the driver who took her to Merworth. Now, is that evidence that I just recited enough to say that there was a murder here? That evidence doesn't come close to proving murder. If you took my client's statement, I don't think so, out of the case. Let me ask you just a dumb question. Why was it at closing arguments that the defense went first here? Isn't that the case or did you go second? I didn't try the case. I thought the defense for some reason made the closing statements first before the pros. They usually do. Yeah. Okay. In Pennsylvania. In Pennsylvania. Okay. Sorry. Defense goes and the prosecutor goes. There's no rebuttal. And I assume there were various charges. Pennsylvania law is still the case where the jury is charged with lesser degrees of homicide. Yes. All right. And the argument, the principal arguments of the defense lawyer were that none of these would apply or that one or more of the lesser charges might apply. Because of the drinking, he argued that she could not formulate the specific intent on what would be third degree. But his other argument was that my client's mother, his client then, died of natural causes. And to buttress that argument, instead of using the corpus delicti rules. But you can see why a jury might not buy that because the, I don't know if it was Dr. Baden or the other doctor that said that her arteries or in the heart were occluded 60 to 70% or so. Well, that doesn't mean you're going to have a heart attack imminently. 80% of us. Or 60 to 80. I mean, usually it's got to be. It's 80%. It's got to be. There's people that can be 95 and still able to function until they get the heart attack. But 60 to 80% is quite often for someone like this, like Mrs. Sawyer's mother, Dr. Sawyer's mother. Well, the people that function, you know, they usually have people who are paying attention to the heart condition, etc. But you can see why, my point is you can see why a jury wouldn't necessarily find that that was strong evidence that this person was imminently about to die and had a heart attack. Well, it's Dr. Baden, Dr. Baden's foremost forensic pathologist. He chaired the Martin Luther King reinvestigation into his assassination committee in Congress. He chaired the reinvestigation into JFK. He did a lot to do. He's in Missouri now. Understood. But let's go back to Judge Zerica's questions about, so what were the lesser included, were all lesser included offenses that could apply here charged? Third degree was charged. And I think that was. And, you know, obviously this case caused the superior court some problems and the PCRA court as well. But, you know, we have a certain kind of review here. Tell us how we get to the point where you want us to be by going through our standard of review. Very well. That's a great question. Williams v. Taylor says that even though a state court decision correctly states the governing principle, if it interprets it and applies it in a manner that is unreasonable, habeas relief can be granted. That's the majority opinion of Williams v. Taylor. Here, our superior court, in interpreting and applying Strickland's prejudice requirement, said, the defendant has not shown that had a corpus delecti charge been given, she would have been acquitted. Now that raises the burden. Wait a minute. You keep saying, was there a corpus delecti charge? Are you saying it wasn't given or that it was attempted to be given but wasn't given correctly? I thought it was the latter. It is the latter almost, but that was not an attempt at corpus delecti. That was just something the judge told the jury. Now, if you want to call it an attempt, that's a good way to phrase it. It never, the attempt, never said you must not consider the statements, inculpatory statements of the defendant. It never said that. It also was given in conjunction with other jury instructions, several times given in repeated and closing address by the prosecutor, that in making decisions you consider all the evidence. So it's an inconsistent charge with the others. And it does not say you must not consider the inculpatory statements of the accused in making this decision. But nevertheless, was there not the instruction that the jury had to find beyond a reasonable doubt that there was criminal causation of the death and not medical causation? He did say that they had to find causation. And often that the testimony of experts differ on it. And they had to, before they could find anybody guilty, they had to find causation. And even though this is not entirely in accord with the corpus delecti procedure, didn't this put the crucial question to the jury that it's a matter of beyond reasonable doubt that you have to find that there was criminal causation here of the death? It did, but we say it was not clearly done because it still allowed them to use the statements, the inculpatory statements of the defendant. And two, it's contradicted all over by other charges repeatedly given that you must consider all the evidence. And you don't pick and choose and pick and isolate an incident. But you consider all of the evidence. All the evidence means, of course, my client's inculpatory statements which went beyond, I don't think so. Are there any cases that you know of where a court has granted relief under Strickland for statements that are like the ones here, not completely incriminating? They might be inculpatory, quote, unquote, but they aren't incriminating in the way that we normally understand. I don't know of such a case. I don't know of one either. But the fact that on its face the statement is not incriminating when the prosecutor makes it incriminating, turns it into a tacit admission, and says an innocent person wouldn't say this. This is by no means what an innocent person would say. An innocent person would say, oh, you're crazy, et cetera, et cetera. Then it becomes a hammer. And in regard to the other evidence, the lack of a wheelchair, the diapers in the car, not telling anybody, a delayed reporting of her mother. Well, also the testimony of one doctor that it might have been a suffocation. There was saliva found on the pillow. You know, there's a host of other evidence that could exist here. It would seem that, you know, going into trial, probably the best argument would be to try to get third degree based on intoxication. But I guess the jury just didn't buy that. No, the jury didn't buy that. But going into trial, I think when you have natural death as a competing cause of death. Well, there was evidence that there was a natural death, and there was evidence that there was not in the jury. I'm having trouble hearing, I'm afraid. I'm sorry. I'm not hearing anything right now. Can you hear me now, Jane? No. Okay. We'll get you back on rebuttal, and then we'll try to get this fixed before Ms. Harden. Yeah. Can you hear me now? You know, maybe we could just put it on telephone to finish up this argument. We could do audio. Okay, we'll take a five-minute recess. Perfect. Okay. Hey, Gary, I was just wondering about a big phone number. We just launched a connection with the phone out there, but we're wondering if we can switch to audio. No connection with sound. Okay. So we launched this sound connection. That's what it was? Yeah. Okay. Sounds good. Thank you. Okay. Yeah. Yeah. Yeah. Okay.   Yeah. Yeah. Yeah. I don't know. Okay. Yeah. I'm not sure there is one in that. Yeah. Okay. Yeah. Yeah. Yeah. Oh, no. No, it's right up here. Go to... Go to 216. 247. Go to 216. 247. 247. 247. Okay. Yeah. It's right up in here. Right. Okay. Okay, I just tried it. Okay. Okay. Okay. Hello? Oh, the judge is on the line. Okay. I've got speaker phone now. Hi, Judge. This is Greg at the podium. Okay. Can you hear me okay? Yeah. Can you turn the volume up, or can I? Daryl, can I turn the volume up? The volume, okay. Okay. Okay. Okay, Judge, how's this? That sounds good. Okay. Can you raise it up more? All right, well. All right, Judge, could you just do me a favor and say one more thing just so that we can check your volume? Okay. Can you hear me? I'm testing, testing, talking. Can you hear me okay? Yes, that's very clear, and it's a good volume. Okay, good. I'll let the judges know that you are ready to go then. Okay, good. Okay. All right, whenever you're ready. Judge Roth, can you hear us? Yes, I can. Okay, thank you. Your Honors, may it please the Court, it's Sarah Hart on behalf of the Superintendent of SEI Muncie in the Commonwealth of Pennsylvania for the Lebanon County District Attorney's Office. Let me just start off with just a general question here. I mean, and I realize maybe it's putting you on the spot, but it seems as if this is a case that really belongs with a third degree. I mean, here's someone who's accused of killing her 80-some-year-old mother, and she's purportedly highly intoxicated, and there's a lot of evidence against her, I'm not arguing. But it would seem that it's more, this is one where the jury, I'm not quite sure why they found that it was intentional if somebody purportedly was intoxicated. Maybe they just didn't believe that she was at the time. I don't know. I believe that they rejected that defense, Your Honor. Can you keep your voice up, please, Ms. Hart? I'm sorry about that. Can you hear me now? Yes, I hear you much better, yeah. Your Honor, I actually believe that based on the evidence that was presented to them, they made that decision for a reason. The evidence against the defendant was overwhelming, and it was outside of what's been limited to this point, and it seems to be regarding a focus on the medical testimony regarding Dr. Baden versus Dr. Bollinger. The fact that the defendant chose to take her mother, the victim, out of the nursing home despite the fact that she had never done that before. So I believe it showed a premeditation as to taking her out and taking her overnight despite never doing so before. Initially, taking into the fact that she had been scheduled to immediately leave the next morning for a rehabilitation center, why would she take her mother in an overnight when she would be leaving almost immediately the next day? Additionally, the fact that she failed to pack anything, she failed to notify any friends or family that she was leaving for this rehabilitation center. You heard the medical testimony up to this point regarding Dr. Bollinger and the subcutaneous bruise in the larynx, the petechia of the eye, the points for asphyxiation, the DNA test regarding the victim's saliva on the pillow. Additionally, the fact that we would address that the defendant attempted suicide, we would believe also would be evidence against the defendant showing remorse after that. Had any provisions been made to take the mother back to the nursing home that morning? There is no indication that I'm aware that that was indicated. Go ahead. The problem with the corpus delicti instruction is that if such an instruction was given, and Mr. Gelman has noted, it's a muddled instruction, and it talks about that the defendant has to establish when, in fact, it's a reasonable possibility. At least a couple of occasions. We're not sure. We're not sure how the jury took it. But what we are sure is that the prosecutor took the supposedly inculpatory statements of Dr. Sawyer and made it a big deal in the closing to the jury. Your Honor. If that's the case, maybe the corpus delicti instruction should have been significantly more clear in order to allow the prosecutor to do that. Your Honor, it's our position, actually, that the instruction that was given was even more restrictive than a corpus delicti instruction. In the criminal causation instruction. There is that argument, at least in part. And we would say, Your Honor, the judge instructed regarding the medical evidence concerning the subcutaneous bruise, the petechia, and then stated you must decide as the finder of fact whether this evidence proves causation beyond a reasonable doubt running towards the criminal causation of the death as a homicide. When, in fact, the jury could have taken into account all the other circumstantial evidence that I just reviewed for you absent her inculpatory statements. I would also assert that the inculpatory statements themselves I wouldn't necessarily categorize as inculpatory. The statements you made... I agree with you. The trouble is the prosecutor made a big deal out of them in the closing. Based on the length of the closing, Your Honor, I think he called attention to the fact. However, I don't necessarily say that he made a big deal of it. Additionally, before the... What if we think he made a big deal out of it? Was it still permissible? I would... You have leeway at argument to make that statement. I would submit that, Your Honor, that a closing argument is what it is. It's argument. And, in fact, the judge instructed the jury prior to the closing argument's beginning that, remember, what is being said in the closing argument is not evidence. The counsel is permitted to comment on the evidence. It is not evidence. It is mere comments based on facts presented from the witness stand. So I would assert that the argument is what it was, just argument. What... You know, the superior court said an appellant cannot establish that the jury would have acquitted her if they had received the specific corpus delecti instruction. Is acquitted the right way of looking at this particular case? Jim Gershberger, could you keep your voice up? Yes, of course. Is acquitted the right term in this case where we have different degrees that the jury can find? And on the evidence in this case, it's quite possible the jury might have found a lesser degree than first degree. Is that something we can take into account or should take into account when applying Strickland? Or is it limited to the acquittal? Your Honor, I view that when they discuss the term acquittal, they're referencing that specific charge that they're challenging. Additionally, I would refer to Woodford v. Visciotti that although the language they use can be imprecise, it doesn't necessarily mean that they're repudiating the entire standard of Strickland in its application. Frequently do defendants request the corpus delecti instruction in Pennsylvania criminal cases? Do you know? Do they frequently? I'm sorry, Your Honor. Is it frequently done or rarely done, to your knowledge? It depends, Your Honor. It depends on the statements in this case, and as I would say, I would even argue that the statements in this case weren't necessarily inculpatory to necessitate corpus delecti instructions in this case. Judge Roth, any further questions? No, I have no further. Thank you. Judge Zarek, I think you're exactly right on the standard. The standard certainly is not one where the defendant has to prove under Strickland that he or she would have been acquitted. Just a reasonable probability of a different result. And we think that Dr. Bowden's testimony and Dr. Visciotti's testimony, certainly with a good corpus delecti instruction, could very easily have led to a different result, either an acquittal or a third-degree verdict. The fact of the matter is that the evidence aside from her statements really doesn't go to murder. It's all circumstantial, and it all has countervailing balances. I think the weak part of that argument perhaps is the possibility of finding premeditation by the fact that she took her mother home, and she had never done that before. So something was in her mind at that time. Yes. The diaries that they used against my client's statements show that her mother was her best friend, and she was very close to her mother and not close to almost anybody else. And she was concerned that her siblings weren't sharing the load here. Absolutely. In connection with Dr. Sawyer being under intense stress professionally. Yes. Yes, I mean, this is, I don't think that shows premeditation. I think it just shows a desire before a 90-day commitment. She wants to spend time with her mother. She wanted to spend time with her mother in her home. She gave her mother, if she did give the versed, the sedative, so her mother wouldn't wander at night, wouldn't get out of bed and walk. The fact that she didn't take a wheelchair or a sweater, it was late June, and did not take the diapers out of the trunk doesn't go to show murder. What goes to show murder is a very inappropriate response as interpreted by the prosecutor. I don't think so. When the prosecutor is saying, you know, she should have said, no, are you crazy? I would never kill my mother. And that's a tacit admission. And tacit admissions are devastating. They were outlawed basically by Miranda, but the manner in which the prosecutor handled her statement made it inculpatory. The trial judge, in granting relief the first time around, said it was inculpatory, and he heard it. And he was cognizant of the tone and the manner in which that was conveyed to the jury. At what time did the defendant, Dr. Sawyer, leave to go to the alcohol program the next morning? I'm not sure of the time. But they had driven some way before she told the driver that her mother was dead. Had she made any arrangements herself to take her mother back? I just wondered what time she left to go to the program. Well, I don't know if prior to her suicide attempt she had made arrangements. But once she tries to commit suicide, I don't think there are any arrangements thereafter. And once she recovered from it, when her partner's wife found her, her mother was dead. This is a very troubling case. This case sets up as a classic case for a corpus delecti charge. The fact of the matter is that the Superior Court said she would not have been acquitted. That's the wrong standard. That imposes a higher burden of proof on that petitioner under Strickland than the United States Supreme Court. But the Superior Court did not say that consistently. It was just this one example of when it left out the reasonable probability. Oh, you're right. It left out the reasonable probability. But when you say it didn't do that consistently, it stated the correct standard under Strickland that it did do. And Williams v. Taylor says stating the correct standard doesn't count. What counts is the application, the interpretation of that standard. So when you apply that standard, if you have applied it unreasonably, unreasonably here escalating the burden of proof under Strickland, then you can grant the writ. Thank you. Anything further you want to say? Anything further? If you want to just close up. No, Your Honor. Okay. Thank you. Thank you very much, Mr. Gellin, Ms. Hart. Well-presented arguments will take the matter under advisement. Thank you.